[Cite as *State v. Smith*, 2015-Ohio-2977.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,           CASE NO. 6-14-14

      v.

ROBY LYNN SMITH,           O P I N I O N

      DEFENDANT-APPELLANT.

---

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI-2014-2026

Judgment Affirmed

Date of Decision: July 27, 2015

---

APPEARANCES:

    *Michael B. Kelley* **for Appellant**

    *Jason M. Miller* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant Roby Lynn Smith ("Smith") appeals the October 6, 2014, judgment of the Hardin County Common Pleas Court sentencing Smith to 12 months in prison after Smith was found guilty in a jury trial of Illegal Cultivation of Marihuana in the Vicinity of a School or in the Vicinity of a Juvenile in violation of R.C. 2925.04(A),(C)(5)(c), a felony of the fourth degree. For the reasons that follow we affirm the judgment of the trial court.

{¶2} On February 25, 2014, Smith was indicted for one count of Illegal Cultivation of Marihuana in the Vicinity of a School or in the Vicinity of a Juvenile in violation of R.C. 2925.04(A),(C)(5)(c), a felony of the fourth degree.

{¶3} On March 5, 2014, Smith made an initial appearance and attorney Michael Short was appointed to represent him. (Doc. No. 5). On March 10, 2014, Smith was arraigned and he pled not guilty to the charge. (Doc. No. 12).

{¶4} On April 30, 2014, attorney Short filed a written request to withdraw as counsel because Smith had "indicated he does not trust counsel to file motions and conduct a jury trial. Counsel states that the attorney-client relationship is irretrievably broken, and counsel cannot adequately represent the defendant." (Doc. No. 15).

{¶5} On May 5, 2014, a hearing was held on attorney Short's motion to withdraw as counsel. Smith was sworn in at the hearing and presented testimony

on his position that he would rather represent himself than have Short represent him. (Doc. No. 16). Despite Smith's indication that he would rather proceed *pro se*, the trial court found attorney Short's motion not well-taken, and ordered Short to make himself available to advise Smith in his defense and to prepare for trial to the extent that Smith would cooperate. (Doc. No. 16).

{¶6} On May 9, 2014, Smith, acting *pro se*, filed a motion to suppress evidence, arguing that any statements he made to the police in interviews should be suppressed, and that any property or testimony pertaining to him obtained as the "fruit of the illegal interrogation" that occurred on November 14, 2013, should be suppressed. (Doc. No. 19).

{¶7} On May 20, 2014, the State filed a response to Smith's motion to suppress, arguing that the interview recordings established that Smith's statements to officers were voluntary and that the interview recordings showed no coercive practices. (Doc. No. 24).

{¶8} On May 21, 2014, the trial court held a pretrial hearing at which attorney Short orally renewed his motion to withdraw as counsel. Smith did not object to his attorney's motion and the trial court released Short from further representation. (Doc. No. 27). The court then appointed attorney Todd Workman to represent Smith, who was already present in court and accepted the appointment. (*Id*.)

{¶9} On July 28, 2014, another pretrial hearing was held. At that hearing, Smith's counsel moved to withdraw Smith's suppression motion, along with other motions Smith had filed *pro se* before attorney Workman represented him.[1] Plea negotiations were then put on the record at the hearing; however, Smith indicated he would prefer to go to trial and stand by his not guilty plea, so the case was set for trial. (Doc. No. 44).

{¶10} On August 13, 2014, another pretrial hearing was held. At the hearing, another plea offer was discussed and the offer was placed on the record. Smith indicated that he still wished to proceed with trial. At the time of that hearing, Smith tested positive for drugs so his bond was revoked. (Doc. No. 47).

{¶11} On August 18, 2014, Smith's second attorney, Todd Workman, filed a written request to withdraw as Smith's counsel, citing that Smith no longer wished for Workman to represent him. (Doc. No. 53).

{¶12} On August 19, 2014, the case came on for the scheduled trial. Prior to the trial's commencement, the court inquired into attorney Workman's motion to withdraw as counsel. Workman indicated that he filed the motion at Smith's request. Smith stated that he wished to proceed *pro se*, and have attorney Workman as his advisor for the trial. The court then conducted a dialogue with Smith to determine whether he understood the rights he was waiving. Smith

---

[1] As none of these other motions are pertinent to this appeal or were further litigated we will not further mention them.

indicated that he understood, and that he wished to proceed *pro se*. Smith signed a written waiver of counsel at that point, indicating that he was knowingly, intelligently, and voluntarily waving counsel.

{¶13} The case then proceeded to a jury trial. The State called four witnesses and introduced numerous exhibits including an interview of Smith wherein Smith admitted to growing three marihuana plants in his basement. Smith called one witness on his behalf, and the case was then submitted to the jury. The jury found Smith guilty of the sole count against him. Sentencing was set for a later date.

{¶14} On October 1, 2014, the case proceeded to sentencing. The State requested that Smith be placed on community control, and Smith argued for leniency. Citing, *inter alia*, Smith's prior criminal record, which included two felony convictions, the trial court sentenced Smith to serve 12 months in prison. A judgment entry memorializing Smith's sentence was filed October 6, 2014.

{¶15} It is from this judgment that Smith appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED WHEN IT ACCEPTED THE JURY'S GUILTY VERDICT WHICH WAS CLEARLY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR BY FAILING TO EXCLUDE**

**EVIDENCE AT SENTENCING THAT APPELLANT HAD TOLD HIS ATTORNEY THAT HE WOULD NOT COMPLY WITH COMMUNITY CONTROL, AS THAT EVIDENCE WAS A COMMUNICATION DISCLOSED IN AND INTENDED STRICTLY FOR NEGOTIATIONS, AND ITS PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, WHEN IT DENIED APPELLANT'S VERBAL MOTION FOR A SUPPRESSION HEARING, BECAUSE UNDER THE CIRCUMSTANCES, SUCH A HEARING SHOULD HAVE BEEN ALLOWED IN THE INTEREST OF JUSTICE.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, WHEN IT ALLOWED IMPROPER EVIDENCE TO BE ADMITTED, AND/OR FAILED TO DECLARE A MISTRIAL FOLLOWING THE PROSECUTOR'S STATEMENT TO APPELLANT'S WITNESS STEPHANIE RITCHIE, WHICH APPELLANT PERCEIVED AS SUCH A THREAT TO HIS WITNESS THAT SHE WAS EFFECTIVELY MADE UNAVAILABLE TO TESTIFY AS A RESULT OF THE PROSECUTOR'S STATEMENT, AND WHICH RESULTED IN DENIAL OF APPELLANT'S RIGHT TO A FAIR TRIAL.**

**ASSIGNMENT OF ERROR 5**
**THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, WHEN IT ALLOWED IMPROPER EVIDENCE TO BE ADMITTED, AND/OR FAILED TO DECLARE A MISTRIAL FOLLOWING THE PROSECUTOR'S CLOSING STATEMENT WHICH IMPROPERLY CITED FACTS NOT IN EVIDENCE, AND WHICH RESULTED IN DENIAL OF APPELLANT'S RIGHT TO A FAIR TRIAL.**

**ASSIGNMENT OF ERROR 6**
**THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, WHEN IT RULED FOR THE STATE AND AGAINST APPELLANT ON NUMEROUS OBJECTIONS WHEN APPELLANT WAS ATTEMPTING TO ESTABLISH THE AFFIRMATIVE DEFENSE OF 'PERSONAL USE' AS PROVIDED BY 292[5].04(F).**

**ASSIGNMENT OF ERROR 7**
**APPELLANT'S CONVICTION WAS ERROR AS IT WAS [BASED] UPON INSUFFICIENT EVIDENCE.**

{¶16} We elect to address some of the assignments of error together, and we elect to address the assignments of error out of the order in which they were raised.

*Third Assignment of Error*

{¶17} In his third assignment of error, Smith argues that the trial court erred in denying his oral motion for a suppression hearing that was made on the day of his jury trial. Specifically, Smith contends that while his motion was untimely, the trial court should have granted it in the interest of justice, and thus the trial court abused its discretion in denying Smith's oral motion for a hearing.

{¶18} Smith initially filed a timely suppression motion *pro se*, on May 9, 2014. In that motion he argued that statements he made to police officers in the interviews conducted while the search warrant was executed at his residence should have been suppressed. Later, after Smith's first counsel had withdrawn at Smith's request, Smith had new counsel appointed and Smith's second counsel

withdrew Smith's suppression motion, along with other motions Smith had filed *pro se*.

{¶19} In withdrawing the suppression motion, Smith's attorney stated that he could find no legal grounds or meritorious arguments to support the suppression motion filed by Smith. Smith's counsel then requested that the trial court address Smith personally regarding the withdrawal of the suppression motion, as Smith had filed it *pro se*, to ensure that he understood what was happening. At that time, the trial court conducted the following dialogue with Smith.

> **[COURT]: * * * [T]here's a motion May 9th the Defendant, pro se, filed to suppress * * * So Mr. Smith, do you understand what your attorney's saying?**
>
> **[SMITH]: Yes I do Your Honor.**
>
> **[COURT]: So I'm gonna ask you specifically, 'cause you have advice of counsel, do you need to talk with Mr. Workman anymore?**
>
> **[SMITH]: No.**
>
> **[COURT]: Alright. Concerning the motion that you personally filed on May 9th of this year to suppress, do you wish to dismiss that motion?**
>
> **[SMITH]: Yes Your Honor.**
>
> **\* \* \***
>
> **[COURT]: Alright. The Court will put on a motion—or entries finding that those three motions have been dismissed. The**

**responses that have been filed in each of those will be considered then no longer relevant. \* \* \***

(July 28, 2014, Tr. at 3-5). A journal entry formally dismissing the suppression motion was filed July 29, 2014. (Doc. No. 44).

{¶20} When Smith's case came on for trial on August 19, 2014, Smith indicated that he wished to proceed *pro se* and dismiss his second attorney and keep him as stand-by counsel only. After the trial court inquired into the matter and Smith signed a written waiver of counsel, the following dialogue occurred between Smith and the trial court.

> **[SMITH]: Before we go any further Your Honor, I had a[n] issue to discuss. My motion to suppress evidence seems to have been revoked, I believe is the word, Mr. Workman told me. I had no idea that was happening. I would have liked to have had that motion heard.**
>
> **[COURT]: That was done in open court in the courtroom while we were all present.**
>
> **[SMITH]: My impression and Ms. Ritchie over here was present and heard the same thing I did was that my other two motions were being discarded willingly. I had no clue that was part of the deal. I was told two of my motions and the Prosecutor's motion were** [--]
>
> **[COURT]: Can you speak to that Mr. Workman, or [prosecutor], perhaps, you can. I don't have the file.**
>
> **[PROSECUTOR]: Your Honor this is the time of trial, we're not here to discuss pretrial motion issues. They were all withdrawn. The State's prepared to go forth to trial. \* \* \***

> **[COURT]: Those were all done, Mr., we did, remember I'm very careful to put things on the record to make sure that everybody knows what's happening, and we brought you in when we talked plea negotiations. * * * And I do remember, specifically, that those motions were addressed on the record. Alright. Anything further?**
>
> **[SMITH]: No Your Honor.**

(Aug. 19, 2014, Tr. at 17-19).

{¶21} On appeal Smith now argues that the trial court abused its discretion in denying his oral motion for a suppression hearing on the day of trial. Smith cites no law supporting his argument, and actually concedes that Crim.R. 12(D) and (H) generally require that all pre-trial motions have to be made within 35 days of arraignment or 7 days before trial, whichever is earlier. Smith argues instead that in the interests of justice, the trial court should have held a hearing on his suppression motion.

{¶22} As the record makes clear, despite Smith's claims on the day of trial, he was specifically addressed by the trial court at a prior pretrial hearing and Smith unequivocally indicated his desire to withdraw his motion to suppress both through his counsel and by himself personally. He explicitly stated when he was asked by the trial court if he wanted to dismiss his suppression motion that he did want to dismiss that motion. Thus on the basis of the record before us, we cannot find that the trial court erred in denying Smith's oral motion made on the day of

trial for a suppression hearing.[2]  Accordingly, Smith's third assignment of error is overruled.

*First and Seventh Assignments of Error*

**{¶23}** In Smith's seventh assignment of error he argues that there was insufficient evidence to convict him of Illegal Cultivation of Marihuana in the Vicinity of a School or in the Vicinity of a Juvenile.  In his first assignment of error, he argues that his conviction was against the manifest weight of the evidence.

**{¶24}** Whether there is legally sufficient evidence to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy.  *Id.*  When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Leonard,* 104 Ohio St.3d 54, 2004–Ohio–6235, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

---

[2] Furthermore, notwithstanding the timing and Smith's clear withdrawal of his suppression motion, there is no indication that Smith had any remotely meritorious arguments to make in support of any suppression motion.  His attorney stated as much at the pretrial hearing where the motion was dismissed, and the recordings of Smith's interviews with the police, which he sought to suppress, clearly indicated that Smith was mirandized and informed of his rights and that he willingly spoke with the police.

{¶25} The Ohio Supreme Court has "carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 10, quoting *State v. Thompkins,* 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

{¶26} Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *Thompkins*, *supra*, at 387. In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id.* In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Andrews,* 3d Dist. Allen No. 1–05–70, 2006–Ohio–3764, ¶ 30, quoting *Thompkins* at 387.

{¶27} In this case, Smith was convicted of Illegal Cultivation of Marihuana in the Vicinity of a School or in the Vicinity of a Juvenile in violation of R.C. 2925.04(A),(C)(5)(c), which reads,

**(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.**

**\* \* \***

**(C)(1) \* \* \* [W]hoever commits a violation of division (A) of this section that involves marihuana is guilty of illegal cultivation of marihuana.**

**\* \* \***

**(5) If the drug involved in the violation is marihuana, the penalty for the offense shall be determined as follows:**

**\* \* \***

**(c) If the amount of marihuana involved equals or exceeds two hundred grams but is less than one thousand grams, illegal cultivation of marihuana is a felony of the fifth degree or, if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.**

{¶28} Several of the pertinent words and phrases in the statute above have been further defined in the Ohio Revised Code. Pursuant to R.C. 2925.01(F), " '[c]ultivate' includes planting, watering, fertilizing, or tilling."

{¶29} According to R.C. 2925.01(P), an offense is "committed in the vicinity of a school" if the offender commits the offense "within one thousand feet of the boundaries of any school premises, regardless of whether the offender knows the offense is being committed \* \* \* within one thousand feet of the boundaries of any school premises."

-13-

{¶30} According to R.C. 2925.01(BB), an offense is "committed in the vicinity of a juvenile" if the offender commits the offense "within one hundred feet of a juvenile * * * regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense."

{¶31} At trial, the State called four witnesses in order to convict Smith of Illegal Cultivation of Marihuana in the Vicinity of a School or in the Vicinity of a Juvenile. The first witness the State called was Detective Mike Conley of the Hardin County Sheriff's office, who was assigned to the Hardin County Crime Task Force. (Tr. at 2). Detective Conley testified that he was involved in investigating the case against Smith, and that during his investigation controlled buys had been conducted that traced back to Smith's residence at 201 South High Street in Kenton. (*Id*. at 3-4). Detective Conley testified that he acquired a search warrant to search Smith's residence, and he was part of the team that executed the search warrant. (*Id*. at 4).

{¶32} Detective Conley testified that when they executed the search warrant at Smith's residence, Smith was present, as was Smith's girlfriend and her child. Detective Conley testified that through the course of his investigation he learned that three children were actually residing at the residence, though only one

was present at the time the search warrant was executed.[3]  (Tr. at 5).  Detective Conley testified that Smith's residence was also approximately 740 feet from Lifeworks, a nearby school.  (*Id*. at 6).

**{¶33}** Detective Conley testified that he photographed the exterior and interior of the residence, that he collected evidence, logged that evidence, and did an inventory sheet of the evidence collected.  (Tr. at 5-10).  Detective Conley testified that while searching the residence, he located various pieces of drug paraphernalia and plastic baggies that were later found to contain marihuana.  (*Id*. at 10-14).

**{¶34}** Detective Conley testified that in the basement of the residence, there was a small "boxed off room."  (Tr. at 20-21).  The boxed off room was framed by wood, closed with cardboard and sealed with spray foam.  (*Id*. at 20-21).  Pictures of the boxed off room were introduced into evidence.  (*Id*.)  Inside the small boxed off room were three growing marihuana plants.  (*Id*.)  Photographs of the plants as they were found were also introduced into evidence.  (*Id*.)

**{¶35}** Detective Conley testified that there were exhaust pipes leading from the small boxed off room.  He also testified that in the basement, there were grow lights, potting soil, pruning shears, plastic cups (used to start growing the plants), pipes, a rolling machine, a digital scale, stems and marijuana debris.  (Tr. at 20-

---

[3] A photograph of the mother, Smith's girlfriend, holding the young child at the scene on the day of the warrant's execution was introduced into evidence.

30). Photographs of all these items were introduced into evidence. Detective Conley also testified that $129 dollars was found on Smith, and that of that money, $125 of it matched money that had been used in a controlled drug buy the day prior. (*Id*. at 32).

{¶36} The State next called Wade Melton, Director of Hardin County Juvenile Court and Hardin Community School, who corroborated that the nearby school, Lifeworks, which Detective Conley had testified was 740 feet away, was a school. Specifically, Melton testified, it was a school for children in grades 6-12 having difficulties in public schools either with behavior disorders, mental health, drugs, or alcohol. (Tr. at 51-53).

{¶37} The State next called Detective Brian Beach. Detective Beach testified that he was a detective for the city of Kenton and worked as part of the Hardin County Crime Task Force. (Tr. at 55). Detective Beach testified that on November 14, 2013, he went to 201 South High St. in Hardin County to execute a search warrant. Detective Beach testified that it was his job to interview everyone present and assist with the search. (*Id*. at 55-57).

{¶38} Detective Beach testified that he interviewed Smith twice while at Smith's residence. (Tr. at 66). Detective Beach testified that Smith was cooperative, that he admitted he had three plants growing in the basement, and that Smith admitted to selling some marihuana to his friends. (*Id*. at 68-72).

Recordings of the interviews were played for the jury and were introduced into evidence. (State's Ex. 15).

{¶39} On the first recorded interview, Smith unequivocally admitted that he was "growing a few plants" in his basement. (State's Ex. 15). He clarified that he was growing three plants. (*Id.*) Smith stated that this was his "first try" growing marihuana and that he learned how to do it from the internet. (*Id.*) Smith stated that it was a personal decision to grow plants, and that he started doing it because it was costing him too much to purchase marihuana. (*Id.*) Smith stated multiple times that he knew he was breaking the law by growing marihuana plants, but he stated that he was under the impression he was only committing a misdemeanor. (*Id.*)

{¶40} Smith further admitted that he would "look out for friends" that "come by and need some" and that he sold them marihuana for the cost he had put into it. (*Id.*) He first stated that he would "gift" his friends a "joint" if they asked him for one. (*Id.*) Smith stated that he was trying not to traffic marihuana, but he admitted that he had sold marihuana to as many as six different friends. (*Id.*) He stated that he usually sold an "eighth" or 3.5 grams for $20, and that he would occasionally sell as much as 7 grams. (*Id.*) He denied selling in larger bulk amounts. (*Id.*)

{¶41} On the second, shorter recorded interview, Smith stated that his usual sale of marihuana was an "eighth" for $20.[4] (State's Ex. 15). He was also questioned about the controlled buy money that had been found on him at the time of the execution of the warrant, and about purchasing marihuana the day prior in Lima. (*Id.*)

{¶42} The State next called Deputy Sergeant Dwight Underwood of the Hardin County Sheriff's Office. (Tr. at 92). Sergeant Underwood testified that he was certified to test for marihuana and to his training relative to that certification. (*Id.* at 93-100). Sergeant Underwood testified that he tested the marihuana taken from Smith's residence and he testified as to how it was tested. (*Id.* at 100-105). He testified that five separate exhibits were submitted to him for testing, and that he tested each of the five samples. (*Id.* at 105). Sergeant Underwood testified that the biggest exhibit/sample, State's Exhibit 7, weighed 426.3 grams, and the others weighed 1.96 grams, 6.51 grams, .54 grams, and 54.42 grams respectively. (*Id.* at 112-113). Sergeant Underwood testified that after conducting a chemical analysis he found all of the substances submitted to him for testing to be marihuana. (*Id.* at 113). Sergeant Underwood testified that he weighed and tested the vegetation within 24 hours of receiving it. (*Id.* at 120).

---

[4] The first interview with Smith lasted just under 10 minutes, and the second interview was just over 6 minutes.

{¶43} At the conclusion of Sergeant Underwood's testimony, the State rested its case. At that time, Smith did not make a Crim.R. 29 motion for acquittal. He similarly did not make a Crim.R. 29 motion for acquittal at the close of evidence. Smith has thus waived his challenge to sufficiency of the evidence for purposes of appeal, absent plain error. *State v. LeMasters*, 11th Dist. Lake No. 2007-L-129, 2008-Ohio-2139, ¶ 17, citing *State v. McCrory,* 11th Dist. Portage No.2006-P-0017, 2006-Ohio-6348, at ¶ 39 (additional citation omitted).

{¶44} Nevertheless, looking at the evidence in the light most favorable to the State, the State clearly presented testimony that a rational trier of fact could find proved beyond a reasonable doubt that Smith was guilty of the crime as alleged. The State presented testimony that Smith's residence was searched and three marihuana plants were found growing in the basement. The State presented an interview with Smith where Smith admitted he was growing the marihuana that was found. The State presented evidence that there was in excess of 400 grams of marihuana seized.

{¶45} In addition, the State presented evidence that there were various items used in cultivating marihuana found in the basement such as grow lamps, potting soil, and pruning shears. Moreover, the State presented testimony that Smith's grow operation was done in the same house where three juveniles resided, one of whom was present at the time of the search warrant. Furthermore, the State

also presented testimony that Smith's grow operation was within 1000 feet of a school. The State only had to prove that the grow operation was done either in the vicinity of a juvenile *or* in the vicinity of a school, and it actually established both. Thus even if Smith had properly made a Crim.R. 29 motion, we find that sufficient evidence was presented to convict him. Therefore his seventh assignment of error is overruled.

{¶46} Smith next argues in his first assignment of error that his conviction was against the manifest weight of the evidence. In Smith's case-in-chief, Smith called Dr. Yousif Rojeab, an associate professor of pharmaceutics at Ohio Northern University. Dr. Rojeab testified that he weighed the plants in question on June 27, 2014, approximately eight months after they had been weighed by Sergeant Underwood. Dr. Rojeab testified that he weighed the evidence submitted to him and it weighed approximately 131.02 grams. (Tr. at 135). On cross-examination Dr. Rojeab testified that a wet plant will weigh different than a dry plant. (*Id*. at 139).

{¶47} On appeal, Smith argues that his conviction was against the weight of the evidence because Dr. Rojeab's testimony was that the evidence submitted to him weighed less than 200 grams. However, Sergeant Underwood testified that he weighed the evidence within 24 hours of receiving it and that it totaled in excess of 400 grams. Sergeant Underwood testified that drier vegetation gets lighter over

time, which could explain the difference between the weights. (Tr. at 119). To an extent, Dr. Rojeab corroborated this in his testimony when he testified that he was not an expert on moisture contents of plants, but the weight would be different between a wet plant and a dry plant. (*Id*. at 139).

{¶48} Thus while Dr. Rojeab did test the marihuana submitted to him, he did so nearly eight months after Sergeant Underwood and the testimony established that vegetation can lose weight over time as it dries out. On the basis of the record before us, we cannot find that the factfinder clearly lost its way in convicting Smith. This argument is thus not well-taken.

{¶49} Smith next argues that the witnesses in this case were not credible, for instance citing that Detective Beach's report stated that it was filed at 8:33 a.m., when the raid did not actually begin until 9 a.m. However, Detective Beach testified that sometimes officers did not bother to change the time stamps on their reports. Moreover, this timing inconsistency does nothing to invalidate the evidence found at Smith's residence or Smith's admissions, therefore the argument is not well-taken.

{¶50} Lastly, Smith contends that the State of Ohio failed to establish venue in this case, even though Hardin County is mentioned half a dozen times or more and the city of Kenton was mentioned multiple times at trial. Despite this clear mention of venue, Smith argues that none of the State's witnesses ever

established that the crime occurred in the State of Ohio. Notwithstanding the numerous assumptions that a jury could properly make based on mentions of the county and city, multiple exhibits introduced by the State in this case mentioned Ohio as the location, such as State's Exhibit 1, an Ohio Uniform Incident Report, State's Exhibit 2, which states that the search warrant was served at "201 S. High [S]t. Kenton, Oh," and State's Exhibit 6, the marihuana examination report from the Hardin County Sheriff's Office, indicating the office was in Kenton, Ohio. (State's Ex. 1, 2, 6). Therefore, Smith's argument on this issue is similarly not well-taken.

{¶51} On the basis of the record before us we cannot find that the factfinder clearly lost its way or created a manifest miscarriage of justice in convicting Smith. The weight of the evidence supports Smith's conviction. Accordingly, Smith's first assignment of error is overruled.

*Fourth Assignment of Error*

{¶52} In Smith's fourth assignment of error, he contends that the trial court abused its discretion by allowing "improper evidence" to be admitted in the form of statements by the prosecutor to a witness made outside the presence of the jury and that the trial court erred by failing to declare a mistrial. Specifically, Smith contends that the prosecutor threatened one of his witnesses when the prosecutor

advised a defense witness to confer with independent counsel to determine whether she was in danger of incriminating herself by testifying.

**{¶53}** In reviewing claims of prosecutorial misconduct, the test is whether the prosecutor's remarks were improper and, if so, whether those comments prejudicially affected the substantial rights of the defendant. *State v. Jones*, 90 Ohio St.3d 403, 420 (2000). "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist.1995) (citation omitted). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Braxton,* quoting *State v. Underwood*, 73 Ohio App3d 834, 840-841 (4th Dist.1991), citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

**{¶54}** Prosecutorial misconduct is generally not grounds for reversal unless it so taints the proceedings as to deprive the defendant of a fair trial. *State v. Johns*, 3d. Dist. Seneca No. 13-04-23, 13-04-24, 13-04-25, 2005-Ohio-1694, ¶ 25. Where it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. *See State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21. We review allegations of

prosecutorial misconduct in the context of the entire trial. *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464 (1986).

{¶55} Smith's argument under this assignment of error is based on the following exchange at trial.

> **[COURT]:  Call your next witness Mr. Smith.**
>
> **[SMITH]:  I'd like to call Stephanie Ritchie.**
>
> **[PROSECUTOR]:  State would ask for a sidebar hearing.  Can we have a hearing outside the presence of the Jury?**
>
> **[COURT]:  We may.  Ladies and gentleman, once again, there are these details that come up, and I apologize, but it's necessary.  So the jury will be dismissed for a few moments.  Alright.  Do you wish to call the witness, is that what you wish to do Mr. Smith?**
>
> **[SMITH]: Yes.**
>
> **[JUDGE]:  Alright.  You may be seated.**
>
> **[BAILIFF]:  Justin is getting her.**
>
> **[SMITH]:  Your Honor, respectfully, after you guys admonish her, may I make a statement to her so that she don't feel pressured to testify?**
>
> **[COURT]:  No, that wouldn't be appropriate, I don't think, you know, in this context.  Mr. Bailey?**
>
> **[PROSECUTOR]:  I would object.**
>
> **[BAILIFF]:  Come on in please.  Are you wanting me to go ahead and swear her?**

**[COURT]:  Pardon me?**

**[BAILIFF]:  Are you wanting me to go ahead and swear her at this point or wait until the**

**[COURT]:  No, not at this point**

**[BAILIFF]:  Okay.  You can go ahead and have a seat.  I'm just gonna put this onto your jacket.**

**[STEPHANIE RITCHIE]:  Okay.**

**[BAILIFF]:  Maybe the other side.**

**[RITCHIE]:  Get my hair out of the way.**

**[BAILIFF]:  There you go.  Thank you.**

**[COURT]:  Okay.  Gentleman, you may be seated.  Ma'am, would you state your name please?**

**[RITCHIE]:  Stephanie Ritchie.**

**[COURT]:  Alright.  Ma'am, the Defendant has told us that he wishes to call you as a witness in this matter, and we've had a sidebar[5] and the Prosecutor has raised the thought that you might be testifying to things that would subject you to criminal prosecution.  That, you know, your testimony may lead to testimony by you under oath of illegal activity.  I don't know what that is, I mean I don't know what that is.  However, it's my duty as Judge to advise you, of course, that you have a right to remain silent, that you need not answer questions that would subject you to criminal prosecution in any form, and to just make sure you understand that you have a right to, you know, under the Fifth Amendment of the United States Constitution, you have a right to refuse to answer questions that might or**

---

[5] Although there is no break in the transcript indicating that the sidebar occurred, the sidebar had apparently taken place at this point.  Regardless, it was done off the record.

**would subject you to criminal prosecution. Mr. Bailey, is that** [--
]

**[PROSECUTOR]: Yes Your Honor, but more specifically, what the State's alluding to is there is a charge on the books of permitting drug abuse, and it states no person who is the owner, lessee, occupant, or has custody or control of the premises or real estate shall another** [sic] **to commit a felony drug abuse. This charge of cultivation fits under that. She, we have evidence that she is the lessee under the lease of this residence. If she testifies that she is the lessee, she could be incriminating herself, giving us more evidence on the felony of the fifth degree permitting drug abuse.**

**[COURT]: I believe I have advised her that anything that she says can be used against her in criminal prosecution.**

**[PROSECUTOR]: I just wanted the Court to know where we're coming from, and the evidence may get better as to other activities of a drug nature. But it will remain to see** [sic] **what she testifies to and what we get out of cross.**

**[COURT]: I believe I have done that.**

**[PROSECUTOR]: Alright.**

**[SMITH]: Your Honor I'd like to request that she not testify.**

**[COURT]: Alright. Mr. Smith that's totally up to you.**

**[SMITH]: I'm not comfortable with the threats that he's—I'm not comfortable with putting her on the stand right now. I'd rather lose and go to prison than make both of us go to prison because he's being a bully.**

**[COURT]: Mr. Smith I just want you to know that I believe I've done what is appropriate to be done under the law just to protect somebody's rights, but you have every right to call that person and require that person answer your questions under oath. We're not doing anything to stop your ability to do that.**

**[SMITH]: I agree. You haven't done anything wrong Your Honor.**

(Tr. at 142-147).

{¶56} On appeal, Smith argues that "the prosecutor's statement that Ritchie would be subject to criminal charges for 'permitting drug abuse' functioned to intimidate the witness, served as a backhanded impeachment, and expressed the prosecutor's opinion about the credibility of the witness. As a result, Appellant was denied a fair trial, and the verdict should be reversed." (Appt's Br. at 15).

{¶57} First, Smith's claims that the prosecutor's statement served as "backhanded impeachment" and that the prosecutor expressed his opinion about the witness's credibility are wholly irrelevant as this conversation was done outside the presence of the jury and thus had no impact whatsoever on the outcome of the trial. While it may not be clear from the preceding dialogue that the conversation was held outside the presence of the jury, as the dialogue continues and Smith states that he intends to rest his case, the court states that it needs to bring the jury back in so that Smith can rest in front of them. (Tr. at 147). In addition, at the beginning of the dialogue the trial court expresses that it intended to conduct the conversation outside the presence of the jury.

{¶58} Second, dealing with Smith's claim that the prosecutor was intimidating the witness, Smith is unable to establish that the prosecutor did

anything improper. The prosecutor initially requested the sidebar to ensure that the witness was aware of her rights. While the prosecutor perhaps did not need to make the witness aware of a specific charge she could incriminate herself for based upon her anticipated testimony we find no indication from the record that the prosecutor engaged in witness intimidation.

{¶59} Moreover, we certainly can find no fault with the trial court's actions in the preceding dialogue, and we further cannot find that the trial court erred in failing to declare a mistrial, as Smith suggests. Smith never objected to the prosecutor's statement and he certainly never went so far as to request a mistrial. There is no remote indication that a mistrial was appropriate here, particularly given that all of the preceding dialogue happened outside the jury's presence. Finally, we would note that it was ultimately Smith who stated that he did not want the witness to testify. He was never prevented from calling her as a witness and he never proffered any testimony she may have given.

{¶60} For all of these reasons we cannot find that the trial court committed plain error or improperly failed to declare a mistrial where one was neither asked for nor appropriate. Accordingly, Smith's fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶61} In Smith's fifth assignment of error, he argues that the prosecutor made improper, prejudicial remarks in closing argument.

{¶62} "Parties have wide latitude in their closing statements, particularly 'latitude as to what the evidence has shown and what inferences can be drawn from the evidence.' " *State v. Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-7085, at ¶ 13, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, at ¶ 213. A prosecutor may comment upon the testimony of witnesses and suggest the conclusions to be drawn. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, at ¶ 116.

{¶63} Because Smith failed to object to any of the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 139; *State v. Saleh*, 10th Dist. Franklin No. 07AP–431, 2009-Ohio-1542, ¶ 68. A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. *Id*. We may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct. *State v. Williams*, 79 Ohio St.3d 1, 12, (1997).

{¶64} In this case Smith specifically objects to the following portions of the State's closing argument.

> **Now in this particular case, the Defendant in his own words, out of his own mouth in his opening statement said I was cultivating marihuana. He doesn't even deny that fact. He admits it. So right now, as far as the State's concerned, besides our own evidence, his own admission and his own statement up front was that he's growing marihuana. That's cultivating.**

> ***
>
> **\* \* \* [Y]ou first have to find out did he or did he not guilty** [sic] **guilty of cultivation or manufacture? That's an admitted fact by the Defendant. I think it's been established both from the cultivation as well as the manufacturing. In the evidence of the pictures, which you have numerous, you can see the evidence of the cultivation.**
>
> ***
>
> **We submit to you that evidence without exception, we ask you to find Mr. Roby Smith, based on his own statements and the cumulative evidence, everything's in front of you, guilty of the charge of illegal cultivation in the vicinity of a juvenile and the vicinity of a school. Thank you.**

(Tr. at 160, 165, 169).

{¶65} Dealing first with the latter two statements cited by Smith as improper, the State did enter into evidence an interview with Smith where Smith admitted to growing the marihuana plants. Thus we cannot find the State's characterization in the latter two statements as improper at all.

{¶66} However, in the first statement cited by Smith, the State specifically referred to an alleged admission made by Smith during his own opening statement. We would note that neither Smith nor the State reproduced the transcript from opening statements. Nevertheless, even assuming the State was referring to opening statements as though they were evidence any such reference, even if error for a defendant making his own opening statement, would be harmless error.

-30-

{¶67} Most illustrative of the fact that the State's erroneous statement was harmless are the multitude of admissions by Smith that he was growing marihuana. In the interview recording Smith admits multiple times that the plants were his and that he was growing marihuana. In addition, when Smith was questioning his witness, Dr. Rojeab, he refers to the marihuana plants as "my plants." (Tr. at 133). Furthermore, in Smith's own closing argument he stated, "I think we all can agree I was growing weed. I was growing marihuana. I think what we disagree on is the 131.2 grams." (Tr. at 170).

{¶68} Finally, we would note that the trial court gave instructions that opening and closing statements were not to be considered as evidence, and the jury is presumed to follow those instructions. (Tr. at 154); *State v. Twyford*, 94 Ohio St.3d 340, 356, 2002-Ohio-894 (citation omitted). Based on the numerous admissions made by Smith presented at trial and the trial court's curative instruction, we cannot find that the State's comment in closing argument was anything but harmless in this case even if it was improper. Therefore, Smith's fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶69} In his sixth assignment of error, Smith argues that the trial court erred in ruling against Smith on multiple objections when Smith "was attempting to establish the affirmative defense of 'personal use' as provided by 292[5].04(F)."

-31-

{¶70} The affirmative defense referred to by Smith is codified in R.C. 2925.04(F), and reads,

**(F) It is an affirmative defense, as provided in section 2901.05 of the Revised Code, to a charge under this section for a fifth degree felony violation of illegal cultivation of marihuana that the marihuana that gave rise to the charge is in an amount, is in a form, is prepared, compounded, or mixed with substances that are not controlled substances in a manner, or is possessed or cultivated under any other circumstances that indicate that the marihuana was solely for personal use.**

**Notwithstanding any contrary provision of division (F) of this section, if, in accordance with section 2901.05 of the Revised Code, a person who is charged with a violation of illegal cultivation of marihuana that is a felony of the fifth degree sustains the burden of going forward with evidence of and establishes by a preponderance of the evidence the affirmative defense described in this division, the person may be prosecuted for and may be convicted of or plead guilty to a misdemeanor violation of illegal cultivation of marihuana.**

{¶71} At the outset, the affirmative defense characterized above in R.C. 2925.04(F) provides an affirmative defense to a fifth degree felony charge of Illegal Cultivation of Marihuana. By its plain language, it does not apply to a fourth degree felony charge of Illegal Cultivation of Marihuana in the Vicinity of a School or in the Vicinity of a Juvenile as we have in this case.

{¶72} Nevertheless, Smith's assertion on appeal that he had wished to establish a "personal use" affirmative defense at trial is not supported by the record. First, it was clear from Smith's statements to Detective Beach in Smith's interview that Smith was not growing the marihuana merely for personal use. He

both sold it and gave it away to at least six other people according to his own statements.

{¶73} Second, the questions that Smith claims the trial court improperly prevented him from asking to establish his affirmative defense do not even pertain to the establishment of a personal use affirmative defense. While Detective Beach was on the stand, Smith attempted to ask Detective Beach, "How many grams of marihuana constitutes a felony?" (Tr. at 86). The State objected, citing that it was irrelevant, and that it was asking the witness for a "point of law." (*Id.*) The trial court sustained the objection, stating that the question was "not [within] the witness's purview. The Court will instruct the Jury about the charge that's before it and what is required to prove the charge." (*Id.*) Smith now claims the trial court erred, as this statement would have helped Smith establish his affirmative defense. However, there is nothing in this exchange that suggests that the question pertained to any alleged affirmative defense regarding "personal use."

{¶74} Similarly, Smith asked Detective Beach while he was on the stand "what kind of charge [would] gifting marihuana * * * be?" (Tr. at 85). The State objected, stating that it was irrelevant, and that objection was sustained. As the charge of Illegal Cultivation does not have anything to do with "gifting" marihuana, Smith's question does not appear to be relevant here as the State suggests. However, Smith contends that the objection was improperly sustained

as the question went to creating his affirmative defense of "personal use." Despite Smith's arguments, the question does not, in any way, further an affirmative defense for Smith. In fact, Smith "gifting" the marihuana would hurt his claim to an affirmative defense because it would prove that he was not growing the marihuana merely for his own "personal use." This argument is thus not well-taken.

**{¶75}** Lastly, Smith argues that while he was cross examining Sergeant Underwood, the following discourse occurred and he was prevented from establishing testimony toward his affirmative defense.

> **[SMITH]: Okay. Are you aware that a month before you conducted your weight, the Ohio Attorney General released a law enforcement bulletin** [--]
>
> **[PROSECUTOR]: Objection. Where are we going with the law and providers by third party.** [sic] **It's not even before the Court. It's all pure hearsay.**
>
> **[SMITH]: It's Ohio law from our own** [--]
>
> **[PROSECUTOR]: Attorney General (inaudible-talking over one another)**
>
> **[SMITH]: (inaudible-talking over one another) Hardin County.**
>
> **[COURT]: I don't know where you're going with this Mr. Smith, but the** [--]
>
> **[SMITH]: The Ohio Attorney General sent out a bulletin saying that—and I'm only trying to explain where I'm going with this—that the stem should be** [--]

> **[PROSECUTOR]:** Objection. (Inaudible-talking over one another)
>
> **[SMITH]:** (Inaudible- talking over one another)
>
> **[PROSECUTOR]:** Objection. Have this argument by sidebar.
>
> **[COURT]:** The Court will instruct the Jury on the law of Ohio. The law is clear, and I will instruct the Jury what the law of Ohio is.

(Tr. at 122).

**{¶76}** Despite his attempt to question Sergeant Underwood regarding the Ohio Attorney General's Law Enforcement Bulletin, Smith does not cite to the "Attorney General's Bulletin" in his brief to show how it was relevant, and he similarly does not attach the bulletin to his brief. It appears, however, that he is referring to a Law Enforcement Bulletin made on October 16, 2013 on "Proper Protocol" to weigh marihuana. It is not remotely clear from the Bulletin how this relates to any alleged affirmative defense of personal use as the bulletin pertains to weighing marihuana. There is no indication that the trial court erred in excluding any testimony related to this bulletin, and there is no allegation that the trial court improperly instructed the jury on the law regarding what was weighed in this case. Regardless, the exclusion of this testimony has absolutely no relevance to Smith's claimed affirmative defense of personal use. Smith's arguments are thus not well-taken, and his sixth assignment of error is overruled.

*Second Assignment of Error*

**{¶77}** In Smith's second assignment of error he argues that the trial court committed plain error by "failing to exclude evidence at sentencing that [Smith] had told his attorney that he would [not] comply with community control, as that evidence was a communication disclosed in and intended strictly for negotiations, and its probative value was substantially outweighed by the danger of unfair prejudice."

**{¶78}** Smith specifically argues in this assignment of error that the prosecutor improperly referenced plea negotiations at the sentencing hearing. Smith did not object to the allegedly improper statements when they were made. In arguing that the State's reference was improper, Smith cites Evid.R. 408 for the principle that, "[e]vidence of conduct or statements made in compromise negotiations is * * * not admissible." He also cites to Evid.R. 103(D) for the principle that "[n]othing * * * precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

**{¶79}** Despite citing multiple rules of evidence, Smith omits the most relevant rule of evidence to his case, Evid.R. 101(C)(3), which *clearly* states *that the rules of evidence do not apply* to miscellaneous criminal proceedings, such as *sentencing hearings. See also State v. Johnson*, 7th Dist. Mahoning No. 10MA32,

2010-Ohio-6387, ¶ 10. Thus Smith's argument is not well-taken and his second assignment of error is overruled.[6]

{¶80} Having found no error prejudicial to Smith in the particulars assigned, his assignments of error are overruled and the judgment of the Hardin County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ROGERS, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**

---

[6] We would note that the trial court did not follow the State's recommendation for sentencing regardless of the propriety of the State's comments at the sentencing hearing, as the State recommended community control and the trial court ultimately sentenced Smith to 12 months in prison. According to the record the sentence was based in large part on Smith's criminal history of two felonies, which included one prior lengthy prison term. In addition, the trial court was also clearly concerned with the fact that Smith had been to the W.O.R.T.H. center previously, he tested positive for drugs during the pendency of this case, and his offense was in the vicinity of a juvenile.