[Cite as *State v. Lester*, 2020-Ohio-2988.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  14-18-21

      v.

PAUL JEROD LESTER,               O P I N I O N
AKA JEROD LESTER,

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  14-18-22

      v.

PAUL JEROD LESTER,               O P I N I O N
AKA JEROD LESTER,

      DEFENDANT-APPELLANT.

**Appeals from Union County Common Pleas Court**
**Trial Court No. 2018-CR-0012**

**Judgments Affirmed**

**Date of Decision:   May 18, 2020**

APPEARANCES:

      *Joseph C. Patituce and Megan M. Patituce* **for Appellant**

      *Raymond Kelly Hamilton* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Paul Jerod Lester ("Lester"), appeals the November 2, 2018 judgment entry of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a series of drug-related events involving Lester in Union County, Ohio, that took place at a hotel in Marysville on August 17, 2017 and on December 1, 2017 through January 11, 2018 at a residence in Raymond, Ohio.

{¶3} On March 1, 2018, the Union County Grand Jury indicted Lester on eight counts regarding the Raymond residence, including: Count One, trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6)(a), a fifth-degree felony; Count Two, trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(a), a fifth-degree felony; Count Three, possession of cocaine in violation of R.C. 2925.11(A)(1), (C)(4)(a), a fifth-degree felony; Count Four, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(c), a third-degree felony; Count Five, aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(b), a third-degree felony; Count Six, illegal manufacture of drugs in violation of R.C. 2925.04(A), (C)(2), a second-degree felony; Count Seven, having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony; and Count Eight, engaging in a pattern of corrupt activity in violation of R.C.

2923.32(A)(1), (B)(1). (Case No. 2018-CR-0012, Doc. No. 2). The indictment included forfeiture specifications as to Counts One, Two, Four, and Eight. (*Id.*). On March 7, 2018, Lester appeared for arraignment and entered pleas of not guilty. (Case No. 2018-CR-0012, Doc. No. 7).

{¶4} Thereafter, on March 19, 2018, the Union County Grand Jury indicted Lester on four criminal charges involving the Marysville hotel in a separate indictment: Count One, trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6)(a), a fifth-degree felony; Count Two, trafficking in cocaine in violation of R.C. 2925.03(A)(2), (C)(4)(a), a fifth-degree felony; Count Three, possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), fifth-degree felony; and Count Four, tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony. (Case No. 2018-CR-0061, Doc. No. 1). The indictment included a forfeiture specification as to Count Three. (*Id.*). On March 22, 2018, Lester appeared for arraignment and entered pleas of not guilty to this indictment. (Case No. 2018-CR-0061, Doc. No. 6). Both indictments were joined and set for trial.

{¶5} On June 6, 2018, Lester filed his objection to joinder of his cases for trial and requested the indictments be tried separately. (Case No. 2018-CR-0012, Doc. No. 36); (Case No. 2018-CR-0061, Doc. No. 26). On August 21, 2018, the State filed its memorandum in opposition to Lester's objection to joinder together with its notice of intent to use "other-acts" evidence under Evid.R. 404(B) and R.C.

2945.59 as to the indictments. (Case No. 2018-CR-0012, Doc. No. 66); (Case No. 2018-CR-0061, Doc. No. 45). Ultimately, the trial court denied Lester's motions objecting to joinder. (Case No. 2018-CR-0012, Doc. No. 101); (Case No. 2018-CR-0061, Doc. No. 61).

{¶6} Lester's case proceeded to a jury trial and he was found guilty of all counts in case number 2018-CR-0012, and of all counts in case number 2018-CR-0061. (Case No. 2018-CR-0012, Doc. Nos. 113, 114, 115, 116, 117, 118, 119, 120, 121); (Case No. 2018-CR-0061, Doc. Nos. 72, 73, 74, 75). Further, the jury found that the currency and property identified in the specifications in case number 2018-CR-0012 and of the currency identified in the specification in case number 2018-CR-0061 were subject to forfeiture. (Case No. 2018-CR-0012, Doc. Nos. 113, 114, 116, 120); (Case No. 2018-CR-0061, Doc. No. 74).

{¶7} On November 2, 2018, the trial court sentenced Lester. (Case No. 2018-CR-0012, Doc. No. 121). In case number 2018-CR-0012 the trial court sentenced Lester to prison for a mandatory term of 7 years on Count Six, 11 months each on Counts One, Two, and Three, 30 months on Counts Five and Seven, and 1 year on Count Eight. (*Id.*). The terms were ordered to be served consecutively for an aggregate sentence of 24 years and 9 months, 7 years of which being mandatory.[1] (Nov. 2, 2018 Tr. at 145); (Case No. 2018-CR-0012, Doc. No. 121). In case number

---

[1] For the purpose of sentencing, the trial court merged Counts Four and Five with the State electing to proceed on Count Five. (Nov. 2, 2018 Tr. at 120, 127, 129, 144); (Case No. 2018-CR-0012, Doc. No. 121).

2018-CR-0061, the trial court sentenced Lester to 11 months each on Counts One, Two and Three, and 30 months on Count Four. (Case No. 2018-CR-0061, Doc. No. 76). The terms imposed were ordered to be served consecutively for an aggregate sentence of 5 years and 3 months. (Nov. 2, 2018 Tr. at 150); (Case No. 2018-CR-0061, Doc. No. 76). The trial court further ordered that Lester serve the sentence in case number 2018-CR-0061 consecutively to the sentence imposed in case number 2018-CR-0012 for a total sentence of 30 years in prison. (Case No. 2018-CR-0061, Doc. No. 76).

{¶8} Lester filed his notices of appeal in both cases on November 13, 2018, which we have consolidated for the purpose of this appeal. (Case No. 2018-CR-0012, Doc. No. 126); (Case No. 2018-CR-0061, Doc. No. 81). Lester raises the following eight assignments of error for our review.

**Assignment of Error No. I**

**The trial court committed reversible error in granting the state's motion to join the two indictments.**

**Assignment of Error No. II**

**The trial court erred in permitting the state to introduce evidence pursuant to Evid.R. 404(B) that was not relevant and whose prejudicial value substantially outweighed any probative value.**

**Assignment of Error No. III**

**The trial court erred in permitting the state to introduce prejudicial evidence of bad acts committed by other individuals, depriving defendant of substantial constitutional rights.**

**Assignment of Error No. IV**

**The state engaged in prosecutorial misconduct throughout the course of the trial that deprived the defendant of his right to a fair trial.**

**Assignment of Error No. V**

**Defense counsel's failure to renew his motion as to the improper joinder of the two indictments and failure to stipulate to defendant's prior conviction in a timely fashion or bifurcate the count, rendered counsel's performance deficient to the point of being ineffective.**

**Assignment of Error No. VI**

**The cumulative effect of this multitude of errors in this case deprived defendant of his constitutionally guaranteed right to a fair trial.**

**Assignment of Error No. VII**

**Defendant's conviction was against the manifest weight of the evidence.**

**Assignment of Error No. VIII**

**The state failed to present sufficient evidence to sustain a conviction.**

{¶9} For ease of our discussion, we will first review Lester's seventh and eighth assignments of error together, followed by his first assignment of error, then his second and third assignments of error together, and finally followed by his fifth, fourth, and sixth assignments error, which we will address separately.

## Assignment of Error No. VII

**Defendant's conviction was against the manifest weight of the evidence.**

## Assignment of Error No. VIII

**The state failed to present sufficient evidence to sustain a conviction.**

{¶10} In his seventh and eighth assignments of error, Lester argues that his convictions are based on insufficient evidence *and* are against the manifest weight of the evidence. In particular, in his eighth assignment of error, Lester argues that the State presented insufficient evidence to establish a predicate offense (as to Count Six of the Raymond-residence indictment), and therefore he could not have been convicted of engaging in a pattern of corrupt activity as to Count Eight. In his seventh assignment of error, Lester argues that the weight of the evidence demonstrates that the jury lost their way (by finding him guilty) because the State offered no evidence that he sold or offered to sell drugs (as to Count Four of the Raymond-residence indictment) when they determined that Lester manufactured crack cocaine (as to Counts 6 and 8), rather than purchasing it from another person.

*Standard of Review*

{¶11} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389

(1997), *superseded by statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Thus, we address each legal concept individually.

{¶12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by statute on other grounds*, *Smith*, 80 Ohio St.3d at 89, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25, citing *Jackson*. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶13} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "'[o]nly in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment.'" *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119, citing *Thompkins* at 387, quoting *Martin* at 172.

*Sufficiency of the Evidence Analysis*

{¶14} We begin by addressing Lester's sufficiency-of-the-evidence argument in his eighth assignment of error as it relates to Counts Six and Eight in the Raymond-residence indictment. In Count Six of the indictment, Lester was indicted for illegal manufacturing of drugs under R.C. 2925.04(A), (C)(2). To

-9-

convict Lester of that charge the State must prove that Lester did "knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.04(A) (2016) (current version at R.C. 2925.04(A) (2019)).

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

R.C. 2901.22(B). "'Manufacture' means to * * * *process*, make, prepare, or *otherwise engage in any part of the production of a drug*, * * * and includes * * * *other activities incident to production*. (Emphasis added.) R.C. 2925.01(J) (2016) (current version at R.C. 2925.01(J) (2019)).

{¶15} Importantly, "the [S]tate is not required to prove that [Lester] is the individual who assembled all of the materials[,] but rather need "only prove that [Lester] engaged in any part of the production of [crack cocaine], which includes extraction and other activities incident to production." *State v. Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 37, citing R.C. 2929.01(J). *See State v. Myers*, 9th Dist. Summit No. 23435, 2007-Ohio-2737, ¶ 17 (including disposal as part of the manufacturing process).

{¶16} Lester argues that his illegal-manufacture-of-drugs conviction (under Count Six) is based on insufficient evidence because the State failed to prove that Lester knowingly manufactured crack cocaine. We disagree. To prove Lester's knowledge of and connection to the manufacturing process of crack cocaine, the

State presented several witnesses, the first being, Kenny Czarnecki ("Czarnecki"), Lester's associate. Czarnecki testified that he assisted Lester in the "*process*" of manufacturing crack cocaine because he (Czarnecki) was familiar with the "*process*". (Oct. 30, 2018 Tr., Vol. II, at 265-266). Czarnecki further testified that crack cocaine is more addictive than cocaine in powder form. (*Id.*). Czarnecki also testified that Lester provided him with the raw materials necessary to manufacture the crack cocaine. (*Id.* at 265).

{¶17} Next, the State offered the testimony of Alyssa Carver ("Carver"). Carver testified she saw Czarnecki making crack cocaine for Lester from Lester's "product" (i.e., powder cocaine) at the Raymond residence. (Oct. 31, 2018 Tr., Vol. II, at 175). Then, the State called Samantha Righter ("Righter"). Righter testified that she observed crack cocaine at the Raymond residence, and she saw Lester making it and described Lester's "*process*." (Oct. 30, 2018 Tr., Vol. I, at 176-177).

{¶18} Lastly, the State presented the testimony of Detective Eric Kolopajlo ("Det. Kolopajlo") who testified that he photographed "the makings of Crack Cocaine" which included baking soda, a pot filled with water, a little rock which resembled a crack rock, and torn-plastic-baggies for use in transporting contraband. (Oct. 31, 2018 Tr., Vol. I, at 25-27, 33, 40). (*See* State's Ex. 90). *See State v. Forney*, 9th Dist. Summit No. 24361, 2009-Ohio-2999, ¶ 8, 12.

{¶19} Based on this evidence, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Lester knowingly engaged in the illegal manufacture of drugs (crack cocaine) under Count Six. As such, Lester's illegal-manufacture-of-drugs conviction (under Count Six) is based on sufficient evidence.

{¶20} Next, Lester argues that his engaging-in-a-pattern-of-corrupt-activity conviction (under Count Eight) is also based on insufficient evidence. Specifically, Lester argues that the State presented insufficient evidence that Lester illegally manufactured crack cocaine (under Count Six) which was a predicate offense relating to his engaging-in-a-pattern-of-corrupt-activity charge.[2] We disagree.

{¶21} Engaging in a pattern of corrupt activity under R.C. 2923.32 states:

> (A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

R.C. 2923.32(A)(1) (2011). The term "enterprise" is defined in R.C. 2923.31(C) and provides that:

> "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

---

[2] Lester does not challenge the sufficiency of the evidence relative to his aggravated-possession-of-drugs conviction under Count Five nor does he allege it is against the manifest weight of the evidence. Count Five constitutes the second predicate offense for Lester's engaging-in-a-pattern-of-corrupt-activity conviction under R.C. 2923.31(E).

The term "pattern of corrupt activity" is also statutorily defined in R.C. 2923.31(E):

"Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

Corrupt activity is defined in R.C. 2923.31(I) in relevant part as:

"Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:

* * *

(2) Conduct constituting any of the following:

* * *

(c) Any violation of section * * * 2925.04 * * * of the Revised Code.

{¶22} Our determination that sufficient evidence exists for Lester's illegal-manufacture-of-drugs conviction under Count Six is dispositive of this assignment of error since Lester only challenges *the sufficiency of the evidence related to the predicate offense* (i.e., Count Six, illegal manufacture of drugs) as to his engaging-in-a-pattern-of-corrupt-activity conviction. Accordingly, based on the evidence in the record, a rational trier of fact could conclude beyond a reasonable doubt that Lester engaged in a pattern of corrupt activity (under Count Eight) by virtue of his illegal-manufacturing-of-crack-cocaine conviction under Count Six, the predicate

offense under the facts presented. Consequently, Lester's engaging-in-a-pattern-of-corrupt-activity conviction under Count Eight is based on sufficient evidence.

*Manifest Weight of the Evidence Analysis*

{¶23} As an initial matter, although Lester challenges the weight of the evidence supporting the jury's findings of guilt as to the aggravated-trafficking-in-drugs charge under Count Four of the indictment, we need not address that argument. *State v. Turner*, 2d Dist. Clark No. 2017-CA-78, 2019-Ohio-144, ¶ 22, citing *State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013-Ohio-5682, ¶ 60-61 and *State v. Zimmer*, 8th Dist. Cuyahoga No. 104946, 2017-Ohio-4440, ¶ 9, quoting *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14. Specifically, "[w]hen counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency [or weight] of the evidence on the count that is subject to merger because any error would be harmless" beyond a reasonable doubt. *Ramos* at ¶ 14, citing *State v. Powell*, 49 Ohio St.3d 255, 263 (1990), *superseded by state constitutional amendment on other grounds*, *Smith*, 80 Ohio St.3d at 102, fn. 4.[3]

---

[3] The Eighth District Court of Appeals expressed concern with the blind application of this principle and hypothesized that there could be a circumstance under which a challenge to an offense that is merged for purposes of sentencing would not be harmless beyond a reasonable doubt. *See Ramos* ¶ 17. However, the Eighth District ultimately determined that it need not reach that issue in *Ramos* after reasoning that, "[f]or purposes of this appeal, our conclusion that the state offered legally sufficient evidence to prove the aggravated murder conviction renders our hypothetical moot." *Id.* at ¶ 18.

**{¶24}** Thus error, if any, with respect to the sufficiency or weight of the evidence as to Lester's aggravated-trafficking-in-drugs charge under Count Four is harmless beyond a reasonable doubt because the trial court merged Count Four with Count Five in the Raymond-residence case. *See Ramos* at ¶ 13 ("Error, if any, with respect to the sufficiency of the evidence on the felonious assault, domestic violence, and kidnapping counts is harmless because those counts were merged into the life sentence imposed for aggravated murder under Count 2."). In other words, Lester was not convicted of the offense because the trial court merged those offenses for purposes of sentencing. *See Turner* at ¶ 22 ("'A conviction does not exist where there has been a guilty verdict * * * but no sentence.'"), quoting *Croom* at ¶ 59, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 12, *superseded by state statute on other grounds*, *United States v. Mackey*, S.D.Ohio No. 3:04cr00096, 2014 WL 6606434, *2 (Nov. 20, 2014), fn. 4. *See also Ramos* at ¶ 16 (noting that "a second line of thought has developed" suggesting that "if a sentence for an allied offense was merged into another sentence, the defendant was not actually 'convicted' of the allied offense"), citing *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶ 24. Indeed, the Supreme Court of Ohio has explicitly stated that a "conviction" requires both a finding of guilt and a sentence. *Ramos* at ¶ 16, citing *State v. Henderson*, 58 Ohio St.2d 171, 178 (1979). For these reasons, we need not address any arguments challenging the weight of the evidence

regarding Lester's aggravated-trafficking-in-drugs charge under Count Four. *See Ramos* at ¶ 13, 18.

{¶25} The evidence we summarized in our sufficiency-of-the-evidence analysis supporting Lester's illegal-manufacturing-of-drugs conviction is weightier than the evidence against that conviction. Lester now argues that there were multiple-independent-criminal enterprises operating at the Raymond residence (which included Czarnecki's illegal-manufacturing-of-drugs operation—producing crack cocaine), and that it is reasonable to assume that he did not use his Columbus source as his supply for crack cocaine, but rather, Czarnecki. However, the State's evidence leads us to a different conclusion because the record supports that Lester directed Czarnecki to manufacture crack cocaine (supplying him with the location, equipment, and raw materials), and relied on Czarnecki's drug-making experience for the crack cocaine manufacturing "*process*". (Oct. 30, 2018 Tr., Vol. II, at 265-266).

{¶26} Essentially, Lester argues that Czarnecki's testimony was not credible and that we as the "thirteenth juror" should determine that Czarnecki illegally and independently of Lester's criminal enterprise, manufactured crack cocaine. Based on the record before us, we decline to reach this conclusion and find his argument to be without merit because the evidence weighs against such a finding based upon the testimonies of Czarnecki, Carver, and Righter. Thus, Lester's illegal-

manufacturing-of-drugs conviction is not against the manifest weight of the evidence.

{¶27} Because we determined that Lester's illegal-manufacture-of-drugs conviction (under Count Six) is not against the manifest weight of the evidence and because Lester's conviction under Count Eight was tied to Count Six, we conclude that Lester's engaging-in-a-pattern-of-corrupt-activity conviction, consequently, is also not against the manifest weight of the evidence. *State v. Schlosser*, 79 Ohio St.3d 329, 334 (1997), (stating "The *pattern* of corrupt activity is demonstrated by the fact that [Schlosser] *committed* the predicate offense.").

{¶28} Accordingly, Lester's seventh and eighth assignments of error are overruled.

### Assignment of Error No. I

**The trial court committed reversible error in granting the state's motion to join the two indictments.**

{¶29} In his first assignment of error, Lester argues that the trial court erred in denying Lester's-motion-to sever his cases for trial. Specifically, Lester argues that the trial court should have ordered separate trials because the facts of each case were not separate and distinct and would be confusing to the jury.

*Standard of Review*

{¶30} "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience

-17-

to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992), citing *State v. Torres*, 66 Ohio St.2d 340, 343 (1981) and 2 LaFave & Israel, Criminal Procedure, Section 17.1, at 354-355 (1984). *See also State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 169 (establishing that it is well settled that the law favors joinder). Notwithstanding this notion that joinder is favored, "[i]f it appears that a defendant or the state is prejudiced * * * by such joinder for trial together of indictments * * *, the [trial] court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14.

> To prevail on a claim of prejudicial joinder, the defendant must affirmatively demonstrate that (1) his rights were prejudiced by the failure to sever, (2) he provided the trial court with sufficient information to allow it to weigh the benefits of joinder against the defendant's right to a fair trial, and (3) the trial court abused its discretion by refusing to sever the charges for trial.

*State v. Jeffries*, 1st Dist. Hamilton No. 2018-Ohio-2160, ¶ 57, citing *Schaim* at 59, citing *Torres*, syllabus. *See State v. Howard*, 3d Dist. Marion No. 9-10-50, 2011-Ohio-3524, ¶ 82, citing *Schaim* at 59, citing *Torres*, syllabus.

{¶31} Generally, we review a trial court's decision on a motion to sever under Crim.R. 14 for an abuse of discretion. *State v. Kelly*, 5th Dist. Delaware No. 17CAA040023, 2018-Ohio-378, ¶ 64, citing *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 166, citing *Torres*, 66 Ohio St.2d at 343. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

**{¶32}** Importantly, Lester failed to renew his motion for severance at the close of the State's case or at the close of all evidence. (Nov. 1, 2018 Tr., Vol. III, Tr. at 394). Consequently, Lester has waived all but plain error on appeal, and to us Lester cannot demonstrate plain error in his argument. "However, a defendant's failure to renew his or her Crim.R. 14 motion for severance at the close of the State's case or at the close of all evidence waives all but plain error on appeal." *Howard* at ¶ 82, citing *State v. Miller*, 105 Ohio App.3d 679, 691 (4th Dist.1995). *See also State v. Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, ¶ 34; *Kelly* at ¶ 63. "To demonstrate plain error, the defendant must demonstrate that the trial court deviated from a legal rule, the error was an obvious defect in the proceeding, and the error affected a substantial right." *Howard* at ¶ 83, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "The defendant must also demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58, 63. "We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"" *Id.*, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶33} Here, the evidence in the record of each indicted case is simple and distinct, involving drug-related activities of certain drugs on particular days at particular locations. *Compare State v. Thomas*, 3d Dist. Allen Nos. 1-11-25 and 1-11-26, 2012-Ohio-5577, ¶ 23 (concluding that the trial court did not err by denying Thomas's motion to sever because, in part, "the evidence of each crime in each indictment was simple and distinct, involving controlled drug buys of certain amounts of crack cocaine on certain days, drug possessions of certain amounts on certain days, and weapons possessions of certain weapons on certain days"). Further, the evidence in the record is direct and uncomplicated and, as we concluded in Lester's eighth assignment of error, was sufficient to sustain the verdicts of guilty by the jury. *See Torres*, 66 Ohio St.2d at 344 ("The evidence in the instant case, however, not only was direct and uncomplicated as to each indictment, but it also was amply sufficient to sustain each verdict, whether or not the indictments were tried together.").

{¶34} Moreover, the record reveals that the trial court instructed the jury that "[t]he charges set forth in each count in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately." (Nov. 2, 2018 Tr. at 95-96). *Compare Thomas* at ¶ 24. *See Torres* at 343, citing *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980), ("We find no merit in this claim because the jury is believed capable of segregating the proof on

multiple charges when the evidence as to each of the charges is uncomplicated.").[4]

Thus, for these reasons, Lester has failed to demonstrate that there was an obvious

defect in the proceedings or that the outcome of his trial would have been different.

{¶35} Accordingly, the trial court did not commit any error, let alone plain

error, by denying Lester's motion to sever and Lester's first assignment of error is

overruled.

### Assignment of Error No. II

**The trial court erred in permitting the state to introduce evidence pursuant to Evid.R. 404(B) that was not relevant and whose prejudicial value substantially outweighed any probative value.**

### Assignment of Error No. III

**The trial court erred in permitting the state to introduce prejudicial evidence of bad acts committed by other individuals, depriving defendant of substantial constitutional rights.**

{¶36} In Lester's second assignment of error, he argues that the State offered

testimony related to "other acts" evidence outside the relevant-time frames set forth

in the indictments which were irrelevant and unfairly prejudicial under *State v.*

*Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695. Moreover, Lester argues in his

second assignment of error that the State did not provide him with sufficient notice

that it intended to use the "other acts" evidence at trial. In his third assignment of

---

[4] To the extent Lester argues that the "other-acts" test was applicable here, his argument is specious. *See State v. Franklin*, 62 Ohio St.3d 118, 122 (1991), citing *State v. Lott*, 51 Ohio St.3d 160, *Roberts*, 62 Ohio St.2d at 175, and *Torres*, 66 Ohio St.2d at 340, (stating "an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B).").

error, Lester argues that the trial court permitted the State to introduce evidence of bad acts committed by witnesses which infringed on his constitutional rights.

*Standard of Review*

{¶37} "'Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to prove a defendant's character or that the defendant acted in conformity therewith.'" *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 21, quoting *State v. Hawthorne*, 7th Dist. Columbiana No. 04 CO 56, 2005-Ohio-6779, ¶ 24, citing *State v. Elliott*, 91 Ohio App.3d 763, 770 (3d Dist.1993) and Evid.R. 404. "'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000).

**{¶38}** Evidence of other acts is generally admissible if it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character; it is relevant when offered for that purpose; and the danger of unfair prejudice does not substantially outweigh its probative value. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 68, citing *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 20 and Evid.R. 401, 403, and 404(B). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Under Evid.R. 403(A), '[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 122, quoting *State v. Maag*, 3d Dist. Hancock Nos. 5-03-32 and 5-03-33, 2005-Ohio-3761, ¶ 71. "'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.'" *Id.*, quoting *State v. Calhoun*, 11th Dist. Ashtabula No. 2010-A-0057, 2012-Ohio-1128, ¶ 82.

**{¶39}** Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001), citing *State v.*

*Maurer*, 15 Ohio St.3d 239, 265 (1984). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157. However, "if the party wishing to exclude evidence fails to contemporaneously object at trial when the evidence is presented, that party waives for appeal all but plain error." *Bagley* at ¶ 53-54, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 59-60, *State v. Barrett*, 4th Dist. Scioto No. 03CA2889, 2004-Ohio-2064, ¶ 20, and *State v. Lenoir*, 2d Dist. Montgomery No. 22239, 2008-Ohio-1984, ¶ 19.

{¶40} "Crim.R. 52(B) governs plain-error review in criminal cases." *Bagley* at ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-14-14, 2015-Ohio-2977, ¶ 63, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68. Under plain-error review, "[w]e may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Id.*, citing *State v. Williams*, 79 Ohio St.3d 1, 12 (1997).

*"Other-acts" analysis*

{¶41} Initially, we must first determine whether Lester preserved this issue (under his second and third assignments of error) on appeal. Lester's arguments center around the testimonies of Jason Maynard ("Maynard"), Samantha Righter

("Righter"), Cassidy Manns ("Manns"), Alyssa Carver ("Carver"), Todd Frye ("Frye"), Kaylee Earles ("Earles"), Timothy Holton ("Holton"), and Matthew Wright ("Wright"). We note, that Lester objected to the testimonies of Maynard, Righter, and Manns, as to relevance. (Oct. 30, 2018 Tr., Vol. I, at 78-79, 127-132, 136-140). Further, Lester objected to the testimony of Carver on the basis that her testimony was inadmissible under Evid.R. 404(B). (Oct. 31, 2018 Tr., Vol. II, at 177). However, Lester failed to object to the testimonies of Frye, Earles, Holton, and Wright. (Oct. 30, 2018 Tr., Vol. II, at 198, 210); (Oct. 31, 2018 Tr., Vol. II, at 200-201); (Nov. 1, 2018 Tr., Vol. I, at 98); (Nov. 1, 2018 Tr., Vol. II, at 188). And, based on our review of the record, we cannot conclude that the admission of the testimonies of Frye, Earles, Holton, and Wright amounted to plain error. As such, we will only address whether the testimonies of Maynard, Righter, Manns, and Carver are subject to Lester's assignments of error.

*Maynard's, Righter's, Manns's, and Carver's Testimony*

{¶42} Lester contends that Maynard, Righter, Manns and Carver were permitted to testify to "other acts" that occurred outside of the indicted-time frames. Because Lester argues that the facts before us involve "other acts" evidence under Evid.R. 404(B), we apply the three-step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 19-20. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the

determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. "The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

*Maynard's Testimony:*

{¶43} In the State's case in chief during its direct examination of Maynard, the following exchange occurred to which Lester's counsel objected:

| [State of Ohio]: | Okay. What's the farthest you ever drove to make a delivery? |
|---|---|
| [Maynard]: | I mean, all around Columbus. All around Delaware and, I mean -- |
| [Lester's Trial Counsel]: | I'm going to object as to relevancy, Your Honor. |
| [State of Ohio]: | I'm trying to determine, Your Honor, how far he drove that night. It occurred |

| | |
|---|---|
| | repeatedly, so I'm trying to figure out how far he drove. |
| [The Trial Court]: | Then ask him how far he drove that night. |
| [State of Ohio]: | So, how far did you drive on August 17, 2017? |
| [Maynard]: | That--I-- can't answer that because I don't remember exactly at that time.  After that happened, just like today, I could not tell you who I went to that day.  Who I went to that night.  I mean, I don't -- I can't recall where I went that day. |

(Oct. 30, 2018 Tr., Vol. I, at 78).  After the objection, the trial court ordered the State to rephrase the question.  Thereafter, no further objection by Lester's trial counsel occurred.  Since Lester's trial counsel's failed to object to the rephrased question, and under the facts presented, we apply plain error.  *See* Crim.R. 52(B).  Assuming, arguendo, that the State's question was an attempt to elicit "[e]vidence of [Lester's] other crimes, wrongs, or acts" outside of the indicted-time frames and in different jurisdictions which would be inadmissible "to show action in conformity therewith", Maynard's response was limited to the State's rephrased question which confined Maynard's answer to acts related to the indicted-time

frame for the Marysville-hotel case. Evid.R. 404(A). (*See* Oct. 30, 2018 Tr., Vol. I, at 78). Here, the State's rephrased question related directly to Counts One and Two. (Case No. 2018-CR-0061, Doc. No. 1). And, under the facts before us, the admission of this evidence does not implicate Evid.R. 404(B). *State v. Carter*, 3d Dist. Allen No. 1-15-62, 2017-Ohio-1233, ¶ 73, (concluding that Evid.R. 404(B) is "not implicated "in situations where the act is related to the crime or has a connection to the offense."). Evid.R. 404(B) applies to the admission of "other acts" extrinsic to the charged offense and not those acts intrinsic to the offense because they are outside the purview of Evid.R. 404(B). *State v. Hill*, 5th Dist. Stark No. 2018CA00077, 2019-Ohio-3432, ¶ 51-52, citing *Jordan v. Dayton Testing Lab.*, 2d Dist. Montgomery No. 19741, 2004-Ohio-2425, ¶ 48 and *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir.2008). Accordingly, as to Maynard's testimony, Lester's argument lacks merit.

*Righter's Testimony:*

{¶44} Turning to Righter's testimony, the record reveals that Righter testified that she had known Lester since she was a teenager and reconnected with him in the summer of 2017 because "[she] was getting high and a friend informed [her] that [Lester] was selling dope." (Oct. 30, 2018 Tr., Vol. I, at 127). When she did not have money, she testified that she exchanged sexual favors for drugs. (*Id.* at 128). Although Lester's trial counsel objected to this line of questioning, he did

so on the on the basis of relevance and not impermissible character evidence under Evid.R. 404(B). (*Id.*). The trial court overruled his objection and instructed the State to tie the dates up to the indictment. (*Id.*). Thereafter, Righter testified that she had also purchased drugs from Lester during the relevant-indicted-time frames in the basement of the Raymond residence utilizing the same forms of payment. (*Id.* at 128-129). *See* Evid.R. 103(A)(1). "'Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and' '[i]n case the ruling is one admitting evidence, a timely objection appears in the record stating the specific ground of the objection, if the specific ground was not apparent from the context.'" *Stark v. Stark*, 5th Dist. Delaware No. 01CAF6020, 2002 WL 109281, *3 (Jan. 4, 2002), quoting Evid.R. 103(A)(1). Notwithstanding the prescription of Evid.R. 103(A)(1) requiring a timely objection stating the specific ground of the objection, even if we assume without deciding that an abuse-of-discretion standard applies to the evidence Lester is challenging on appeal, the result is still the same. *See State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 10 ("We will assume without deciding that an abuse-of-discretion standard of review applies as to Rebecca's testimony, even though Wendel objected to only one of the statements."); *Stark* at *3 ("Although appellant did not specifically state hearsay as the reason for the objection, the court did not abuse its discretion in admitting the evidence.").

{¶45} Importantly, Lester was indicted for trafficking offenses which were alleged to have occurred on August 17, 2017 (arguably "summer of 2017") in Counts One and Two relating to the Marysville-hotel case, and after Lester's objection, Righter's testimony was confined to acts that occurred during the relevant-indicted-time frames in the Raymond-residence case. (Case No. 2018-CR-0061, Doc. No. 1); (Case No. 2018-CR-0012, Doc. No. 2); (Oct. 30, 2018 Tr., Vol. I, at 12). Because we have determined that the Righter's testimony relates to acts intrinsic to the indicted offenses, we conclude Lester's argument is without merit. *See Carter*, 2017-Ohio-1233, at ¶ 73; *Hill*, 2019-Ohio-3432, at ¶ 51.

*Manns's Testimony:*

{¶46} We now address Manns's objected to testimony related to the facts of the Marysville-hotel case. The testimony in question is as follows:

| | |
|---|---|
| [State of Ohio]: | Miss Manns, how long had you been purchasing from Jerod Lester? |
| [Lester's Trial Counsel]: | Your Honor, I'm going to object as to relevancy. |
| [The Trial Court]: | Overruled. |
| [Lester's Trial Counsel]: | Miss Manns, the question pending was, how -- how long had you been purchasing from Jerod Lester? |

| | |
|---|---|
| [Manns]: | I'm not sure. |
| [State of Ohio]: | Does it go back more than a year prior to -- |
| [Manns]: | No. |
| [State of Ohio]: | Let me finish my question.  Does it go back more than a year prior to August 17, 2017? |
| [Manns]: | No. |
| [State of Ohio]: | Did you ever visit Mr. Lester at the address of 21378 Raymond, Ohio -- I'm sorry, 21378 Titus Road, Raymond, Ohio to purchase drugs? |
| [Manns]: | Nope. |

(Oct. 30, 2018 Tr., Vol. II, at 198).  The State was attempting to elicit testimony that Manns had previously purchased drugs from Lester at the Raymond residence (present conduct at issue in the trial).  *See Carter* at ¶ 73; *Hill* at ¶ 51.  However, Manns's testimony revealed that she had not previously purchased drugs from Lester at the Raymond residence.  Even though the question posed to Manns by the State may have involved unindicted-time frames, there is no material prejudice to Lester, given, her response.  *See State v. Jones*, 3d Dist. Logan No., 8-16-18, 2017-Ohio-4351, ¶ 10, quoting *State v. Glenn-Coulverson*, 10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, at ¶ 24, citing *Issa*, 93 Ohio St.3d at 64.  Thus, the trial court

did not abuse its discretion by overruling the objection. Lester's argument is without merit.

*Carver's Testimony:*

{¶47} Next, we turn to Carver's testimony. Carver testified to selling drugs for Lester before and during the course of the indicted-time frames at the Raymond residence. (Oct. 31, 2018 Tr., Vol. II, at 176-178). Lester's trial counsel objected to this evidence pursuant to Evid.R. 404(B) and requested the trial court to strike the testimony, and to instruct the jury to disregard it. (*Id.* at 177). The trial court sustained Lester's objection, but denied the request to strike, and instead gave the jury a limiting instruction. (*Id.* at 177-178). Consequently, we limit our analysis to those extrinsic acts (acts prior to indicted-time frames) within the purview of Evid.R. 404(B). So, if we assume without deciding that Carver's testimony meets the first two steps of the *Williams* analysis, we still cannot conclude that Carver's testimony (that she sold drugs prior to the indicted-time frame for Lester) 'is [] [unfairly] prejudicial "because the trial court instructed the jury that this evidence could not be considered to show that [Lester] acted in conformity with a character trait."'" *Jones*, 2017-Ohio-4351, at ¶ 13, quoting *Wendel*, 2016-Ohio-7915, at ¶ 28, quoting *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 24, (concluding "[t]he trial court's limiting instruction lessened any prejudicial effect of the evidence"). (*See* Oct. 31, 2018 Tr., Vol. II, at 176-178). Thus, any prejudicial effect did not

substantially outweigh the probative value of the evidence. *See State v. Regan*, 5th Dist. Delaware No. 13 CAA 08 0067, 2014-Ohio-3797, at ¶ 19. *See also Wendel* at ¶ 28, citing *Williams* at ¶ 24.

*Evid.R. 404(B) Notice Requirement Analysis*

**{¶48}** Next, we will address Lester's argument concerning whether he was provided reasonable notice in advance of trial of the State's intention to introduce "other-acts" evidence at trial under Evid.R. 404. "Evid.R. 404 was amended in 2012 to adopt a notice requirement." *State v. Nuzum*, 6th Dist. Lucas No. L-15-1122, 2016-Ohio-2744, ¶ 20. As a result of the amendment, "[t]he proponent of other-acts evidence must provide 'reasonable notice in advance of trial' of the general nature of any such evidence it intends to introduce at trial." *State v. Yoder*, 5th Dist. Licking No. 16-CA-54, 2017-Ohio-903, ¶ 24, quoting Evid.R. 404(B). "'[T]he notice given to the defense regarding "other crimes" evidence must be sufficiently clear so as "to permit pretrial resolution of the issue of its admissibility."'" *Id.*, quoting *State v. Tran*, 8th Dist. Cuyahoga No. 100057, 2014-Ohio-1829, ¶ 23, quoting *United States v. Long*, 814 F.Supp. 72, 74 (D.Kan.1993). "Following its amendment, the Ohio rule is now similar to the federal rule, which requires reasonable notice of the general nature of any such evidence in order to prevent unfair surprise." *Nuzum* at ¶ 20, citing *State v. Plevyak*, 11th Dist. Trumbull No. 2013-T-0051, 2014-Ohio-2889, ¶ 12, (citation omitted). "'Whether notice is

"reasonable" will depend on the facts and circumstances of each case.'" *Yoder* at ¶ 24, quoting *Plevyak* at ¶ 19, (citation omitted). Evid.R. 404(B)'s notice requirement "should not be construed to exclude otherwise relevant and admissible evidence solely because of a lack of notice, absent a showing of bad faith." 2012 Staff Note, Evid.R. 404.

{¶49} We note that, unlike other rules of evidence, the plain language of Evid.R. 404(B) requires that the defendant receive "reasonable notice in advance of trial", not written notice of the general nature of "other acts" evidence the State intends to introduce at trial. Evid.R. 404(B). *Compare* Evid.R. 609(B) (requiring "sufficient advance written notice of intent to use" a conviction more than ten-years-old to impeach a witness).

{¶50} Given the specific facts and circumstances of this case, the record supports that Lester was given "reasonable notice in advance of trial" by the State of its intention to use "other-acts" evidence at trial by virtue of its memorandums filed on August 21, 2018. (Case No. 2018-CR-0012, Doc. No. 66); (Case No. 2018-CR-0061, Doc. No. 45). *See Jones*, 2017-Ohio-4351, at ¶ 16; *Plevyak*, 2014-Ohio-2889, at ¶ 20, 22. *See also State v. Heiney*, 6th Dist. Lucas No. L-16-1042, 2018-Ohio-3408, ¶ 66; *In re. T.N.*, 3d Dist. Marion No. 9-15-36, 2016-Ohio-5774, ¶ 73.

{¶51} Nevertheless, Lester's trial counsel objected to the State's "other-acts" evidence on the first day of trial, after the jury had been selected, and before the

parties gave their opening statements. (Oct. 29, 2018 Tr., Vol. I, at 98). Thus, we conclude that Lester's counsel had *actual notice* that the State's evidence contained "other-acts" evidence under Evid.R. 404(B) and R.C. 2945.59 prior to trial. Consequently, we cannot say that Lester was unfairly surprised by the State's use of the "other-acts" evidence because he had notice of the State's intent to use it.

{¶52} Accordingly, we cannot conclude that the trial court abused its discretion by admitting the testimonies of Righter, Manns, and Carver or that the testimonies of Maynard, Frye, Earles, Holton, and Wright amounted to plain error under the facts presented in the record.

*"Bad acts" of witnesses analysis*

{¶53} Next, Lester argues that the State (in its case in chief) was not permitted to offer evidence regarding a witness' own criminal conduct (injecting themselves and others with drugs) "as a testament to [Lester's] bad character." (Appellant's Brief at 11). *See* Evid.R. 404, 607, 611, 614. Indeed

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:
>
> * * *
>
> Evidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607, 608, and 609.

Evid.R. 404(A) and (A)(3). *Compare* Evid.R. 404(A)(1), (2), 405(B).

{¶54} In our review of the record, we note that Lester objected to the testimonies of Detective Nathan Stone ("Det. Stone"), Righter, and Carver on the basis of relevancy. (Oct. 30, 2018 Tr., Vol. I, at 160). (Oct. 31, 2018 Tr., Vol. II, 170-172). (Nov. 1, 2018 Tr., Vol. II, at 290-299). However, Lester did not object to the testimonies of Czarnecki or Holton. Therefore, we will only review Lester's arguments as to the testimonies of Det. Stone, Righter, and Carver under an abuse-of-discretion standard. We will review the testimonies of Czarnecki and Holton under plain error. Nevertheless, regardless of the standard or the rule we apply, for the following reasons the outcome is the same.

{¶55} Lester argues that he was prejudiced by the State's discreditation of its own witnesses on direct examination with evidence of the witnesses "bad acts". We disagree. In our review of the record, we conclude that the State was not attempting to impeach its own witnesses, but was rather having each witness testify to the events portrayed in Lester's surveillance video, from the Raymond residence, which was offered as evidence by the State. *See* Evid.R. 104(A), (B); 901(A), (B)(1). The testimonies of Det. Stone, Righter, Carver, Czarnecki, and Holton laid a foundation for and assisted with the authentication of State's Exhibit 65 (a portable-hard drive), and it created a timeline for the events depicted therein. We conclude that Righter, Carver, Czarnecki, and Holton were not testifying to inadmissible-character evidence under Evid.R. 404(A)(3) as Lester argues, but were only identifying their

activities depicted in the surveillance video.[5] Det. Stone, on the other hand, was testifying to his knowledge as it pertains to the contents of the video related to his investigation. *See* Evid.R. 602, 901(B)(1). *State v. Koch*, 2d Dist. Montgomery No. 28041, 2019-Ohio-4182, ¶ 51, citing *State v. Groce*, 10th Dist. Franklin No. 18-AP-51, 2019-Ohio-1007, ¶ 46, (holding that a witness who experienced the incident depicted in the video and a detective who reviewed the video as part of his investigation were both permitted to testify regarding the contents of the surveillance video under Evid.R. 602). *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 116, citing Evid.R. 901(B)(1) (stating "testimony of a witness with knowledge is valid authentication").

{¶56} Moreover, each witnesses' testimony was a narrative of the events depicted in the surveillance video and provided context for the jury as to these events. *Koch* at ¶ 53, citing *State v. Walker*, 10th Dist. Franklin No. 17-AP-588, 2019-Ohio-1458, ¶ 64 and *State v. Coots*, 2d Dist. Miami No. 2014 CA 1, 2015-Ohio-126, ¶ 24, (reasoning that "to the extent that testimony regarding the events shown on the surveillance video provided context or additional information that could be helpful to the jury, was permitted to comment on the video).

---

[5] Testimony does not violate Evid.R. 404 if it does not pertain to a character evidence. *State v. Murray*, 7th Dist. Mahoning No. 18-MA-0031, 2019-Ohio-5459, ¶ 21, citing 404(A) and *Sibert v. City of Columbus*, 10th Dist. Franklin No. 91AP-522, 1992 WL 41253, *8 (Feb. 27, 1992). "Black's Law Dictionary defines character evidence as 'evidence regarding someone's general personality traits or propensities, of a praiseworthy or blameworthy nature; evidence of a person's moral standing in a community.'" *Id.*, citing *Black's Law Dictionary* (11th Ed. 2019).

{¶57} Accordingly, we cannot conclude that the trial court abused its discretion by admitting the testimonies of Det. Stone, Righter, and Carver. Moreover, we cannot conclude that there is any error that rises to level of plain error as to the testimonies of Czarnecki and Holton which caused a manifest miscarriage of justice under the facts before us.

{¶58} Lester's second and third assignments of error are overruled.

**Assignment of Error No. V**

**Defense counsel's failure to renew his motion as to the improper joinder of the two indictments and failure to stipulate to defendant's prior conviction in a timely fashion or bifurcate the count, rendered counsel's performance deficient to the point of being ineffective.**

{¶59} In his fifth assignment of error, Lester argues that his trial counsel was deficient in his performance by failing to renew his motion against joinder (of the two indictments), by failing to stipulate to Lester's prior conviction timely, and by failing to seek to bifurcate Count Seven. For the reasons that follow, we disagree.

*Standard of Review*

{¶60} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show trial counsel's conduct was deficient

or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. "[T]rial Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶61} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶62} Lester's ineffective-assistance-of-counsel claim centers on his trial counsel's failure to renew his motion against joinder of the two indictments and by

failing to timely stipulate to Lester's prior conviction or, alternatively, to bifurcate Count Seven.

*Joinder of Indictments*

{¶63} As to his ineffective assistance of counsel argument, Lester first argues that his trial counsel was ineffective because trial counsel failed to renew his motion against joinder. The record reflects that Lester's counsel filed a pretrial motion seeking to have the Raymond-residence indictment tried separately from the Marysville-hotel indictment, which the State opposed. (Case No. 2018-CR-0012, Doc. Nos. 36, 66); (Case No. 2018-CR-0061, Doc. Nos. 26, 45). The trial court denied Lester's motion, and Lester's counsel failed to renew the request during trial. (Case No. 2018-CR-0012, Doc. No. 101); (Case No. 2018-CR-0061, Doc. No. 61). Lester argues that his counsel's failure to renew the motion resulted in the waiver of all but plain error below.

{¶64} Even if we assume, without deciding, that Lester satisfied the first prong of *Strickland*, Lester cannot satisfy the second prong. As discussed in Lester's first assignment of error, the stated evidence against him in each indictment was simple, distinct, direct, and uncomplicated.

> The law favors the joinder * * * and the avoidance of multiple trials because joinder conserves judicial and prosecutorial time, lessens the expenses of multiple trials, diminishes the inconvenience to witnesses, and minimizes the possibility of incongruous results from successive trials before different juries.

*State v. Luckie*, 5th Dist. Richland No. 2018-Ohio-594, ¶ 30, citing *State v. Thomas*, 61 Ohio St.2d 223, 225 (1980). Importantly, and dispositive to this argument, Lester cannot demonstrate prejudice as a result of his trial counsel's failure to renew his motion against joinder of the indictments in light of the trial court's instruction (to the jury) to consider each count in the indictments, separately. (Nov. 2, 2018 Tr. at 95-96). Accordingly, Lester is unable to satisfy the second prong of *Strickland*.

### *Stipulation to prior conviction*

{¶65} We now address Lester's argument that his trial counsel should have stipulated to Lester's prior conviction as to Count Seven in the Raymond-residence case more timely. "It is a well-established principle that decisions regarding [these] stipulations are matters of trial strategy and tactics." *State v. Roy*, 10th Dist. Franklin No. 14AP-986, 2015-Ohio-4959, ¶ 22, citing *State v. Rippy*, 10th Dist. Franklin No. 08AP-248, 2008-Ohio-6680, ¶ 16, citing *State v. Edwards*, 119 Ohio App.3d 106, 110 (10th Dist.1997), citing *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir.1992). We recognize that "a[n] [appellate] court must indulge a strong presumption that [trial] counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*,

350 U.S. 91, 101, 76 S.Ct. 158, 163 (1955). To be successful in his ineffective-assistance-of-counsel claim, Lester must overcome this presumption.

{¶66} In our review of the record, we cannot say that the timing of trial counsel's stipulation was deficient or unreasonable under the circumstances presented because Lester's trial counsel stipulated to the admission of State's Exhibit 109 (Lester's prior convictions from Madison County Common Pleas Court) immediately after the State attempted to identify the exhibit by case caption. (Nov. 1, 2018 Tr., Vol. I, at 16-18). After stipulating, the trial court instructed the jury not to consider Lester's prior conviction as a "prior bad act". (*Id.* at 18). Accordingly, in our view, Lester has failed to satisfy the first prong of *Strickland* in this argument.

{¶67} Next, Lester argues that his trial counsel's failure to bifurcate Count Seven contributed to his trial counsel's ineffectiveness. We disagree. Here, Lester's argument is predicated on a determination that his trial counsel committed cumulative error (which is contrary to the conclusion that we reached based on our review of the record). We conclude, under the facts presented, this argument is without merit. *See State v. Sanders*, 2d Dist. Montgomery No. 26666, 2016-Ohio-4724, ¶ 36 (concluding that *State v. Jenkins* 8th Dist. Cuyahoga No. 91100, 2009-Ohio-235, ¶ 17 was distinguishable from *Sanders* on the basis that trial counsel in *Jenkins* failed to file a motion to suppress which was reversible error and thereafter

concluded that while his trial counsel's failure to file a motion for discovery and failure to seek bifurcation "alone would [not] constitute ineffective assistance of trial counsel, together they add to the cumulative nature of counsel's errors."). *See also State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 39, (determining that trial counsel was not ineffective for failing to request a motion to bifurcate Thompson's weapons-under-a-disability charge and distinguishing *Jenkins* based on the cumulative nature of trial counsel's errors.)

{¶68} Accordingly, Lester has failed to demonstrate that the actions of trial counsel were not part of a trial strategy and that the outcome of the trial would have been different. Accordingly, Lester's fifth assignment of error is overruled.

### Assignment of Error No. IV

**The state engaged in prosecutorial misconduct throughout the course of the trial that deprived the defendant of his right to a fair trial.**

{¶69} In his fourth assignment of error, Lester asserts that during trial and during closing arguments that the prosecutor engaged in prosecutorial misconduct denying him a fair trial.

*Standard of Review*

{¶70} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Liles*, 3d Dist. Allen No. 1-14-61, 2015-Ohio-3093, ¶ 31, citing

*State v. Smith*, 14 Ohio St.3d 13, 14 (1984), (citation omitted). "'To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. Thus, "[n]ot every intemperate remark by counsel can be a basis for reversal."'" *Id.*, quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012-Ohio-1526, ¶ 20, quoting *Landrum*, 53 Ohio St.3d at 112. "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist.1995), (citations omitted).

*Analysis*

{¶71} In his argument, Lester asserts that the State improperly impeached its own witnesses through impermissible-character attacks. However, since we have determined in Lester's third assignment of error that the testimonies of the witnesses were not impermissible-character attacks, but rather narrations of States Exhibit 65 offered to lay a foundation, assist with authentication, create a timeline, and provide context for the exhibit for the jury, we reject this argument.

{¶72} We now turn to Lester's argument that Heather Carpenter ("Carpenter") was harassed and threatened by the State which inflamed the jury and resulted in misconduct. Importantly, Lester objected to the admission of

Carpenter's testimony on the basis of relevancy and argued that the presence of Carpenter's son in the surveillance video (State's Exhibit 65) would inflame the jury. (Oct. 31, 2018 Tr., Vol. II, at 236-237). Nevertheless, the trial court overruled the objection and permitted Carpenter's testimony as to Counts One, Two, and Eight of the Raymond-residence case. Thereafter, the State questioned Carpenter attempting to get her to admit that she purchased drugs from Lester or sold drugs for Lester when she was absent from the room where she left her son. (*Id.* at 234-243); (*See* State's Ex. 65). When testifying, Carpenter was uncooperative and evasive, and subsequently attempted to assert her Fifth-Amendment privilege which resulted in Lester's trial counsel's objecting for a second time followed by a request for the trial court to appoint Carpenter counsel after asserting her Fifth Amendment privilege. (Oct. 31, 2018 Tr., Vol. II, at 243, 245-247). Thereafter, the trial court instructed the jury under Crim.R. 5(A)(2) and (3) as to the inferences to be drawn from Carpenter's refusal to testify and Carpenter was immediately excused with no further examination by the State or Lester. (*Id.* at 247-251). *Compare State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, ¶ 39, citing *State v. Dinsio*, 176 Ohio St. 460, 468 (1964), (concluding "the key in *Dinsio* was the fact that the prosecutor, after the witness claimed the privilege, used the witness's prior statement to ask him a series of questions in what amounted to an effort to force the witness to repeatedly assert his right in the presence of a jury and to allow the jury to hear 'innuendo

evidence or inferences of evidence' that the state could not get from the witness directly.").

{¶73} Under the presented facts, it is not prosecutorial misconduct for the State to call a witness, who may claim a Fifth-Amendment privilege, by asking that witness questions. *Dinsio* at 466, citing *Commonwealth v. Granito*, 326 Mass. 494, 499, 95 N.E.2d 539 (Mass. 1950), ("The possibility that a witness may claim the privilege does not prohibit the prosecutor from asking questions."). Moreover, Lester cannot establish prejudice here because the trial court gave the jury a curative instruction which was sufficient to relieve any prejudice Lester may have suffered. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 170, citing *State v. Loza*, 71 Ohio St.3d 61, 75 (1994), *overruled on other grounds*, ("The trial court's curative instruction was sufficient to relieve any prejudice."). Consequently, Lester has failed to establish the second prong of the prosecutorial-misconduct test.

{¶74} Next, Lester asserts that the State committed misconduct when it vouched and bolstered the credibility of witnesses and by making improper comments (regarding Lester's guilt) during closing argument. Addressing prosecutorial misconduct allegations related to closing arguments, "[p]arties have wide latitude in their closing statements, particularly 'latitude as to what the evidence has shown and what inferences can be drawn from the evidence.'" *State v. Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-7085, at ¶ 13, quoting

*State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, at ¶ 213. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 159, ("A prosecutor may state an opinion if based on evidence presented at trial."). "'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Rasawehr*, 3d Dist. Mercer No. 10-19-15, 2020-Ohio-429, ¶ 13, quoting *State v. Encarnacion*, 10th Dist. Franklin No. 16AP-817, 2017-Ohio-5530, ¶ 10, citing *State v. Smith*, 14 Ohio St.3d at 14. "'A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning.'" *Id.*, quoting *Encarnacion* at ¶ 10, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868 (1974). "'Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred.'" *Id.*, quoting *Encarnacion* at ¶ 10, citing *Noling* at ¶ 94, citing *State v. Frazier*, 73 Ohio St.3d 323, 342 (1995).

{¶75} Initially, we note that Lester did not object to any of the prosecutor's statements made during closing argument, and therefore we apply plain error. *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 30, citing *State v. Potts*, 3d Dist. Hancock No. 5-16-03, 2016-Ohio-5555, ¶ 85, citing *State v. Smith*, 3d Dist. Hardin No. 6-14-14, 2015-Ohio-2977, ¶ 63 and Crim.R. 52(B), ("If defense counsel did not object at trial to the allegedly prejudicial remarks, then all but plain error is

waived."). "'A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice.'" *Id.*, quoting *State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 55, quoting *Smith*, 2015-Ohio-2977, at ¶ 63. An appellate court "'may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct.'" *Id.*, quoting *Smith*, 2015-Ohio-2977, at ¶ 63, citing *Williams*, 79 Ohio St.3d at 12.

{¶76} Here, Lester's argument raises issue with several comments made by the State during its closing argument which he argues were attempts to garner sympathy for the witnesses. (*See* Nov. 2, 2018 Tr. at 18). "'We evaluate the allegedly improper statements in the context of the entire trial.'" *Stevens* at ¶ 72, quoting *State v. McGuire*, 3d Dist. Allen No. 1-13-47, 2015-Ohio-1887, ¶ 82, citing *State v. Treesh*, 90 Ohio St.3d 460, 464 (2001), citing *State v. Keenan*, 66 Ohio St.3d 402, 410 (1993). Lester's first allegation is that the prosecutor garnered sympathy for several witnesses by calling them "addicts". Regarding his allegation, taken in context, the prosecutor was summarizing those witnesses' testimonies regarding their admitted drug abuse when characterizing those witnesses as "addicts" which was permissible and based on the evidence presented during trial. *Id.*, (concluding that after taking the statements in context the prosecutor was summarizing the

testimony of the witness). The prosecutor's statements were not improper. Therefore, we reject Lester's first allegation as meritless.

{¶77} Then, Lester argues that the prosecutor's statements regarding the prosecutor's familiarity with "12 step program[s]" when summarizing Maynard's testimony and his reference to Holton's testimony as "fabulous" and "honest" were examples of improper vouching or bolstering. (Nov. 2, 2018 Tr. at 33, 35). "An attorney may not express a personal belief or opinion as to the credibility of a witness." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 232, citing *Williams*, 79 Ohio St.3d at 12. Improper "vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *Id.*, citing *State v. Jackson*, 107 Ohio St. 3d 53, 2005-Ohio-5981, ¶ 117. Upon review, we conclude that the prosecutor did not improperly vouch for or bolster Maynard and Holton's credibility. That is—the prosecutor did not state that he personally believed Maynard or Holton, nor did he place his (the prosecutor's) credibility at issue. Instead, he merely argued that certain facts, presented during the trial, demonstrated that various witnesses were credible witnesses. *State v. Green*, 90 Ohio St.3d 352, 374 (2000), (concluding that the prosecutor properly argued facts to support witness's credibility and that he did not improperly vouch for her).

**{¶78}** Next, Lester argues that the prosecutor improperly appealed to the jury's sense of fairness during his rebuttal argument with the following statement:

> [State of Ohio]: The State of Ohio, as represented as best I very much could, ask that you return guilty verdicts against Jerod Lester for each of these 12 counts in the two different cases. Why? *Just like we held those other people accountable who testified against him, we must hold Jerod Paul Lester accountable.* Thank you.

(Emphasis added.) (Nov. 2, 2018 Tr. at 67). The prosecutor's statement is not appealing to the jury's sense of fairness, but rather the prosecutor is offering a summary of the testimony that the jury heard regarding one of the witnesses who was convicted as a result of his involvement in Lester's-criminal enterprise. (*See* Oct. 30, 2018 Tr., Vol. I, at 83). *See also State v. Klapka*, 11th Dist. Lake No. 2003-L-044, 2004-Ohio-2921, ¶ 44, citing *Frazier v. Cupp*, 394 U.S. 731, 735 (1969).

**{¶79}** In our review of the record we cannot conclude that the statements of the prosecutor made during closing argument resulted in a miscarriage of justice.

**{¶80}** Lastly, Lester argues that the cumulative effect of prosecutorial misconduct deprived him of a fair trial. Because we have determined that no prosecutorial misconduct occurred based on the facts before us, there is no basis for

cumulative error. *State v. Carter*, 2017-Ohio-1233, at ¶ 136, (concluding that because Carter's claims did not rise to the level of prosecutorial misconduct that there is no basis for cumulative error). Accordingly, Lester's fourth assignment of error is overruled.

**Assignment of Error No. VI**

**The cumulative effect of this multitude of errors in this case deprived defendant of his constitutionally guaranteed right to a fair trial.**

{¶81} Finally, Lester argues that the cumulative effect of the trial court's errors denied him a fair trial.

*Standard of Review*

{¶82} "Under [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 222-224 and *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 3d

Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d. Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

*Analysis*

{¶83} We conclude this assignment of error to be without merit because we found no error in Lester's prior seven assignments of error. As such, the doctrine of cumulative error does not apply. *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110.

{¶84} Lester's sixth assignment of error is overruled.

{¶85} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**